UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60956-CIV-ZLOCH/ROSENBAUM

NILDA BURGOS,

       Plaintiff,

v.

WELLS FARGO BANK, N.A.,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

      This matter comes before the Court upon Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Amended Complaint or Motion to Stay [D.E. 8], upon referral by the Honorable William J. Zloch. *See* D.E. 13. The Court has carefully reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the record in this matter. Upon thorough consideration, I now respectfully recommend that the Court grant Defendant's Motion.

### *I. Background*

      On February 25, 2010, in Florida state court, Wells Fargo filed a foreclosure complaint seeking to foreclose on property owned by Plaintiff Nilda Burgos ("Burgos"). *See* D.E. 8 at 1; D.E. 8-1. The property secures a mortgage allegedly entered into by Burgos on October 18, 2006. *See* D.E. 8 at 1; D.E. 8-2.

      Approximately six weeks after Wells Fargo filed its foreclosure action, Burgos filed the instant matter in the County Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Defendant Wells Fargo Bank, N.A., ("Wells Fargo") removed the action to this Court on

the basis that it involves federal questions. *See* D.E. 1. Following Wells Fargo's removal of the case, Wells Fargo sought dismissal. *See* D.E. 3. In response, Burgos filed an Amended Complaint [D.E. 5]. Wells Fargo now seeks to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., or, in the alternative, to stay this case until resolution of the foreclosure proceedings. *See* D.E. 8.

The Amended Complaint contains three counts, but only the first two seek relief against Wells Fargo. *See* D.E. 10 at 8 (conceding that although Count III includes factual allegations against Wells Fargo, those allegations "are only in support of Plaintiff's claim in Count III against John Doe Loan Owner and relief is only sought against John Doe Loan Owner"). Count I requests declaratory relief in the form of an order ruling that Wells Fargo has failed to comply with the requirements of 15 U.S.C. § 1641(f)(2) of the Truth-in-Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA"), because Wells Fargo allegedly has "failed or refused to identify the owner" of the promissory note securing Plaintiff's property ("Promissory Note" or "Obligation"). D.E. 5 at Count I. In addition, Count I asks the Court to require Wells Fargo to identify the owner of the mortgage at issue. *See id.*

In Count II, Burgos seeks damages under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) ("RESPA"). More specifically, Burgos complains that Wells Fargo failed to respond completely to what Burgos described as her qualified written request ("QWR") under RESPA. *See* D.E. 5 at Count II. The document to which Burgos refers as her QWR is dated November 10, 2010, and it asks for the following information:

    1.    A complete and original life of loan transaction history prepared by the Servicer from its own records using its own system and default servicing personnel.

    2.    A copy of your Key Loan Transaction history or XLS

       spreadsheet of all accounts associated with this mortgage loan (this would include both recoverable and non-recoverable and restricted and non-restricted accounts).

3.     The Transaction Codes.

4.     The Code definitions in plain English.

5.     Please attach a copy of the MERS Milestone Reports and MIN Reports.

6.     Please identify the full name, address and telephone number of the current holder of the original mortgage note including the name, address and phone number of any Trustee under the Trust or other fiduciary. <u>This request is being made pursuant to Section 1641(f)(2) of the Truth In Lending Act, which requires the servicer to identify the holder of the debt</u>.

7.     Copies of all collection notes, collection records, communication files or any other form of recorded data with respect to any communications between you and the debtor.

8.     An itemized statement of the full amount needed to reinstate the mortgage as of the date of your response along with an itemized pay-off statement.

9.     Copies of all written or recorded communications between you and any non-lawyer third parties regarding this mortgage (including but not limited to LPS Desktop communiqués, NewTrak communications, NewInvoice transmittals, NewImage transmittals, electronic communications by email or otherwise, collection notes, and any other form of written or electronic document related to the servicing of or ownership of this loan).

10.    All P-309 screen shots of the history [of] all of the accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, etc.) associated with this loan.

11.    A complete explanation of the months in which payments were allegedly missed, the aggregate late charges imposed for

    all such payments, the date and amount of all account payment postings and the basis for the imposition of each late charge fee.

  12. The amount of any funds deposited in any suspense accounts or corporate advance accounts or any other similar accounts (including the amount and date of each transaction, the source of funds, and a description of the deposit account) and a description of all payments from any such accounts including the date of the payment, the purpose or nature of the payment, and the amount of each such payment.

  13. A copy of the front and back portion of my original promissory notes as it exists today along with all endorsements, affixed or un-affixed allonges, and assignments whether recorded or not.

  14. All executed assignments associated with my loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of my mortgage and/or my promissory note from the inception of my loan to the present date.

  15. All records, electronic or otherwise, of assignments of my mortgage, promissory note, or servicing rights to my mortgage.

  16. <u>In accordance with Section 131(f) of the Truth-in-Lending Act, 15 U.S.C. Section 1641(f)</u>, please provide me with the full legal name, street and mailing address, and telephone number of the true owner and holder of the promissory Note signed by my clients and secured by the deed of trust in my clients' mortgage loan referenced above.

D.E. 5-1 (emphasis in original).

  In response to the November 10, 2010, letter, Wells Fargo sent counsel for Burgos a November 15, 2010, letter. *See* D.E. 8-3. This letter states,

  Enclosed you will find the following documents. A description of each document is included for your reference.

Payment History/Customer Account Activity Statement

The Customer Account Activity Statement (CAAS) reflects a complete payment history for the period of November 16, 2007, through the present date. The CAAS reflects when payments were received, how they were applied to the loan, and any distributions made from the loan. The CAAS provides a description for each transaction and running balances of the unpaid principal, escrow, unapplied, outstanding fee accounts. It also includes the date fees and charges were assessed, any amounts paid toward these fees, and waivers/reversal of these fees is also reflected. Late Fees are reported on the annual mortgage statement. The Unapplied and Unapplied/Suspense Balance columns reference the funds that may have been applied to the unapplied account. Payments can be applied to the unapplied account if the funds received do not represent the full monthly mortgage payment due, or if WFHM is not informed of where the payment is to be applied.

Note and Security Instrument

Validate the above mentioned loan. The Note and Security Instrument include, but are not limited to, information concerning our right to assess fees and costs to the loan, inspect the property, and purchase lender placed insurance on the customer's behalf.

HUD1 - Settlement Sheet

Itemization of all charges imposed for the real estate transaction, including incoming and outgoing funds. Items indicating POC (Paid Outside of Closing) are fees associated with the transaction but paid prior to closing.

Final Loan Application

Used to record relevant financial information about a mortgage applicant.

Truth in Lending (TIL)

Contains the final amount financed, annual percentage rate, finance charge, total of payments, payment schedule, and whether the loan includes a demand feature, prepayment penalty, assumption feature, variable rate feature, late charge feature, and security for the loan.

>Good Faith Estimate (GFE)
>
>>Provides an estimate of the settlement charges and loan terms if the loan is approved. . . .

D.E. 8-3.  As described in the letter, attached to it was the "Customer Account Activity Statement." *See id.* at 3-5.

On November 18, 2011, the Honorable William J. Zloch referred Defendant's Motion to Dismiss Amended Complaint or Motion to Stay [D.E. 8] ("Motion to Dismiss") to me for report and recommendation.  This matter is now ripe for disposition.

## ***II.  Discussion***

Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim.  That rule provides, in relevant part,

>**(b)** **How to Present Defenses.**  Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
>>**(6)** failure to state a claim upon which relief can be granted; . . . .

*Id.*  Thus, the Court considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)).  Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice.  *Twombly*, 550 U.S. at 555, 557.  As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true.  *Bell v. J.B. Hunt Transp., Inc.*, 2011 WL 1935557, *2 (11th Cir. May 20, 2011) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 72 (1984)).  But "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Id.* (quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1263 (11th Cir. 2004)) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-51 (2009).  In short, the allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

**A.  Count I**

In Count I, Burgos seeks an order from the Court under the Florida Declaratory Judgments Act declaring that Wells Fargo has an obligation under 15 U.S.C. § 1641(f)(2) of TILA to disclose the identity of the owner of Burgos's Promissory Note and has refused to do so.  *See* D.E. 5 at ¶ 7 & Count I.  She further asks the Court to require Wells Fargo to identify the owner of the Promissory Note.  D.E. 5 at Count I.

The Amended Complaint alleges that "[a]t all times material . . . , Wells Fargo[] is and was a loan servicer that services the mortgage upon Plaintiff's primary residence . . . ." D.E. 5 at ¶ 3.

Therefore, the Court begins by considering the obligation that 15 U.S.C. § 1641(f)(2) imposes upon a "servicer."[1]  That statute, in relevant part, requires as follows:  "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." *Id.*

Here, the Amended Complaint asserts both that Burgos caused Wells Fargo to receive a written request to identify the owner of Plaintiff's Promissory Note and that Wells Fargo "has failed to or refused to identify the owner of the obligation." D.E. 5 at ¶¶ 6, 9, 11.  Thus, under *Twombly* and *Iqbal*, it would appear that Burgos has sufficiently set forth facts that would establish a plausible violation of Section 1641(f)(2)'s requirement to provide the obligor with information regarding the owner of the Promissory Note — if Congress created a private right of action to vindicate Wells Fargo's alleged statutory shortcoming.

Wells Fargo suggests that no such private cause of action exists.  A review of the statutory language and structure, as well as of the cases addressing this same issue, leads this Court to agree.

As the Supreme Court has held, "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted).  Thus, courts must examine a statute to determine whether, in addition to creating a private right, the statute evidences an intent to enact a private remedy. *Id.* (citation omitted).  Without evidence of a statutory intent to create a private cause of action, no such cause

---

[1] With certain exceptions not relevant here, a "servicer" means "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). . . ." *See* 15 U.S.C. § 1641(f)(3) (incorporating definition of "servicer" set forth at 12 U.S.C. § 2605(i)(2)).

of action exists, and "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* (citations omitted).

Section 1640 sets forth the civil liability provisions of the TILA. Under that section, civil liability may lie against any "creditor." *See, e.g.*, 15 U.S.C. § 1640(a) ("any creditor who fails to comply with any requirement imposed under this part . . . is liable to such person . . . ."). Section 1641(e), in turn, extends civil liability against a creditor to "any assignee of such creditor," under certain conditions. *See* 15 U.S.C. § 1641(e). But specifically excluded from the definition of "assignee," and thus, from liability under Section 1641(f)(2), is a "servicer," "unless the servicer is or was the owner of the obligation." *See* 15 U.S.C. § 1641(f)(1). Consequently, although Congress imposed a duty on the part of servicers to provide obligors with information regarding the owners of obligations, the language and design of the statute reveal that Congress chose not to create a corresponding private right of action against servicers who failed to comply with their responsibility under Section 1641(f)(2), unless such servicers were or are the owners of the obligations at issue. *See* 15 U.S.C. § 1641(f)(1). *See Borden v. Saxon Mortg. Servs., Inc.,* 2010 WL 3834590, *8 (S.D. Fla. Sept. 28, 2010).[2] Conspicuously absent from the Amended Complaint, however, is any allegation that Wells Fargo is or was the owner of the Promissory Note. Nor does Burgos's Response to Wells Fargo's Motion to Dismiss [D.E. 10] contest Wells Fargo's observation that "[t]here are no allegations in the Amended Complaint that Defendant is anything other than a

---

[2]*See also Paschette v. Wells Fargo Bank, N.A.*, 2011 WL 3962274, *1 n.3 (M.D. Fla. Sept. 8, 2011); *Patton v. Ocwen Loan Servicing, LLC*, 2011 WL 1706889, *6 (M.D. Fla. May 5, 2011); *Payton v. New Century Mortg. Corp.*, 2003 WL 22349118, *5 (N.D. Ill. Oct. 14, 2003); *Selby v. Bank of Am.*, 2011 WL 902182, *6 (S.D. Cal. Mar. 14, 2011); *Ording v. BAC Home Loans Serv., LP*, 2011 WL 99016, *3 (D. Mass. Jan. 10, 2011); *Robinson v. Wells Fargo Bank, N.A.*, 2010 WL 3515727, *10-11 (E.D. Mich. Aug. 5, 2010); *Banut v. BAC Home Loans Serv., LP*, 2011 WL 5237751, *1-2 (E.D. Cal. Oct. 28, 2011).

servicer for Plaintiff's mortgage." D.E. 8 at 12. As a result, Burgos cannot rely upon Section 1641 to establish a private right of action.

While the Court can understand Burgos's frustration in having an apparent right under the TILA that she cannot seek to enforce, the absence of a private right of action does not render meaningless the obligation that Section 1641(f)(2) imposes on a servicer. Rather, the TILA represents a "comprehensive statutory scheme of remedies" that includes not only certain opportunities for "aggrieved consumers to participate in policing the Act" as "private attorney generals," but also provisions for public civil and criminal enforcement. *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) (citations and internal quotation marks omitted).

For example, depending on the type of financial institution concerned, the TILA assigns, among others, the Office of the Comptroller of the Currency, the Federal Reserve Board, the Board of Directors of the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, the National Credit Union Administration Board, or the Farm Credit Administration to enforce the requirements of the TILA using any authority conferred on them by law. *See* 15 U.S.C. §§ 1607(a)-(b). In addition, the TILA designates the Federal Trade Commission as the "overall enforcing agency" of the statute, expressly granting the Commission "all of the functions and powers . . . under the Federal Trade Commission Act . . . to enforce compliance" with the TILA. *See* 15 U.S.C. § 1607(c). Besides civil enforcement provisions, the TILA imposes criminal liability on anyone who, among other violations, knowingly and willfully "fails to provide information which he is required to disclose" under the TILA — the deficiency that Burgos alleges against Wells Fargo in Count I of the Amended Complaint. *See* 15 U.S.C. § 1611(1). Thus, the statutory scheme and language of the TILA demonstrate that Congress elected to provide for public enforcement of the obligation that

Section 1641(f)(2) imposes on servicers, not private enforcement.

In apparent recognition of this problem, Burgos "cast[s] [her] claim for violation of § 1641(f) as a claim for declaratory relief." *See Anglade v. Wells Fargo Bank, N.A.*, Case No. 11-80483-CIV-HOPKINS (S.D. Fla. Sept. 7, 2011), at 7. Declaratory relief, however, cannot provide a back door for Burgos to accomplish what Congress decided that she should not be able to do directly. *See id*.

In *Christ*, for example, the Eleventh Circuit considered a case where the district court, invoking the Declaratory Judgment Act, awarded borrowers in a class action an award of injunctive relief and restitution of non-filing insurance fees in connection with consumer loans under the TILA, even though nothing in the TILA expressly authorized such relief. Noting that the TILA's "comprehensive statutory scheme of remedies" specifically created private causes of action allowing for recovery of items such as actual damages, statutory damages, and attorney's fees and costs against creditors, the Eleventh Circuit held that injunctive relief and restitution, which were not identified in the TILA as categories of relief permitted in private causes of action, were not available under the Declaratory Judgment Act because they were not available under the TILA. *See Christ*, 547 F.3d at 1297-1300. In reaching this conclusion, the court noted that the relief that the *Christ* plaintiffs sought under the Declaratory Judgment Act consisted of "essentially a declaration of liability under the TILA," which the district court then used as the basis for the injunctive relief and restitution it awarded. *Id.* at 1298. But, the Eleventh Circuit reasoned, under the TILA, a declaration of liability could "only 'lay the basis for a damage award rather than injunctive relief.'" *Id.* (citation omitted). And because Congress had chosen and set forth the only permitted remedies for liability under the TILA, the district court could not award relief other than that identified by the TILA. *Id.* As a result, declaratory relief was improper because "'[b]esides authorizing a declaratory judgment,

the [Declaratory Judgment Act] does not create remedies otherwise unavailable to the plaintiffs' in the anticipated coercive action." *Id.* at 1299 (citation omitted).

Burgos, who also seeks a declaratory judgment under the TILA, can fare no better than the *Christ* plaintiffs. Indeed, she finds herself in an even worse position than they were. Whereas the TILA provisions under which the *Christ* plaintiffs were proceeding allowed for liability of at least some type on the part of creditors in a private cause of action — albeit not the restitution and injunctive relief that the *Christ* plaintiffs sought, Section 1641(f)(2) is specifically devised *not* to authorize liability of any private type against a servicer such as Wells Fargo. *See, e.g., Horton v. Country Mortg. Servs., Inc.*, 2010 WL 55902, *3 (N.D. Ill. Jan. 4, 2010) (internal citations omitted) ("TILA expressly disclaims liability for mere servicers unless the servicer is or was the owner of the obligation."). Because Congress chose under the TILA's remedial scheme to preclude private liability for servicers who fail to comply with Section 1641(f)(2), Burgos cannot use a declaratory judgment to make an end-run around the TILA's specified statutory remedial scheme and secure the private cause of action that Congress elected not to make available through the TILA. *See Anglade*, Case No. 11-60956-CIV-HOPKINS, at 7-8. Accordingly, I respectfully recommend that Count I of the Amended Complaint be dismissed with prejudice.

### B.  Count II

In Count II of the Amended Complaint, Burgos alleges that Wells Fargo violated the RESPA. More specifically, she complains that she submitted a QWR to Wells Fargo on November 12, 2010, but Wells Fargo failed to provide Burgos with the information she sought in the QWR, in violation of 12 U.S.C. § 2605(e)(C)(i). *See* D.E. 5 at Count II.

For its part, Wells Fargo denies that Burgos's November 12, 2010, letter constituted a QWR

under the RESPA. D.E. 8 at 7-8. Second, Wells Fargo urges, even if Burgos's letter qualified as a QWR, the Amended Complaint does not "adequately explain how Wells Fargo's response was inadequate . . . ." *Id.* at 8. Finally, Wells Fargo argues that Burgos's damages claim under Count II fails.

*1. Whether the November 12, 2010, Letter Qualifies as a QWR*

Under the RESPA, a "qualified written request" means "written correspondence" that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 1605(e)(1)(B). The RESPA imposes upon loan servicers a statutory duty to respond to a QWR from the borrower "for information relating to the servicing of such loan . . . ." 12 U.S.C. § 2605(e)(1)(A). "Servicing" refers to "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . , and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Here, the Amended Complaint alleges that Burgos's November 12, 2010, letter to Wells Fargo served as a QWR because it identified the borrower, the loan, and the property, and it included a "statement of the reasons the borrower believed the account to be in error (i.e., payments not being credited and collection by entity other than original lender or servicer)." D.E. 5 at ¶ 18. In addition, the Amended Complaint attaches a copy of the November 12, 2010, letter. *See* D.E. 5-1. Consequently, the November 12, 2010, letter is considered a part of the Amended Complaint. *See*

Fed. R. Civ. P. 10(c).

Examination of the November 12, 2010, letter reveals that, for purposes of considering Wells Fargo's Motion to Dismiss, part of the letter constitutes a QWR, while part of it does not so qualify. First, the letter does set forth Burgos's name and account number, and it asserts that Burgos wrote "to complain about the accounting and servicing" of her mortgage and her "need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses, and records related to the servicing of said loan from its inception to the present date." D.E. 5-1 at 1. Aside from this general characterization of the purpose of the letter, though, the letter identifies no particular charges, fees, payments, or any other specific items about which Burgos voices concern.

Some courts have found that similar general complaints of this nature fail to satisfy the RESPA's requirement that a QWR set forth a statement of the reasons the borrower believes the account to be in error. *See, e.g., Lemperle v. Wash. Mut. Bank*, 2011 WL 197590, *3 (S.D. Cal. Jan. 20, 2011) (citing *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009); *Keen v. Am. Home Mortg. Serv., Inc.*, 664 F. Supp. 2d 1086, 1096-97 (E.D. Cal. 2009)). In view of the Court's duty to consider the facts alleged in the Amended Complaint in the light most favorable to Plaintiff, *see Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted), however, for purposes of Wells Fargo's Motion to Dismiss, the Court will accept that the November 12, 2010, letter contains the requisite statement of the reasons why Burgos believed her account to be in error. *See Manzano v. MetLife Bank N.A.*, 2011 WL 3420822, *2 (E.D. Cal. Aug. 3, 2011) (citing *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 9090 (C.D. Cal. 2009); *Quintero Family Trust v. OneWest Bank, F.S.B.*, 2010 WL 2618729, *9-10 (S.D. Cal. June 25, 2010)).

Thus, the Court turns to whether the sixteen specific categories of information that the November 12, 2010, letter seeks regard the servicing of the loan. In so doing, the Court concludes that some of these items seek information regarding the servicing of the loan. Item 11, for example, requests "[a] complete explanation of the months in which payments were allegedly missed, the aggregate late charges imposed for all such payments, the date and amount of all account payment postings, and the basis for the imposition of each late charge fee." *See* D.E. 5-1 at 2, ¶ 11.

The same conclusion cannot be reached, however, for all of the requests in the November 12, 2010, letter. Items 6 and 16, for example, seek the name, address, and telephone number of the current holder and the "true owner and holder" of the Promissory Note, respectively. *See id.* at 2-3, ¶¶ 6 & 16. Information about the owner of the obligation does not pertain to the "servicing" of the obligation as the RESPA defines that term. *See Anglade*, Case No. 11-60956-CIV-HOPKINS, at 10 (citing *Marsh v. BAC Home Loans Serv., LP*, 2011 WL 1196415, *8 n.8 (M.D. Fla. Mar. 29, 2011)).

Instead, as discussed previously, a servicer's duty to provide information regarding the owner of an obligation arises under the TILA. Indeed, the fact that Section 1641(f) specifically imposes a separate obligation on a servicer to respond to an inquiry regarding the owner of an obligation demonstrates that the servicer's duty in this respect does not constitute a part of "servicing" under Section 2605. Although the statutory construction canon requiring courts to interpret statutes so as to avoid rendering any aspect of the statute meaningless applies to single statutory schemes, *see United States v. Lopez*, 590 F.3d 1238, 1259 (11th Cir. 2009) (citation omitted), in requiring servicers to divulge the owners of obligations to obligors, Section 1641(f) expressly adopts the definition of "servicer" from Section 2605. *See* 15 U.S.C. § 1641(f)(3). Thus, it is clear that Congress intended

for a servicer's obligations under Sections 2605 and 1641(f) to be read in harmony with each other. No need would have existed for Congress to impose the disclosure duty on servicers under Section 1641(f) if Section 2605 already required servicers to provide that information in response to QWRs. Conversely, it would make no sense under Section 1641(f) to expressly exempt non-owner servicers from liability for failure to disclose if they were subject to liability for the very same deficiency under Section 2605. In short, the servicer's duty to respond to a QWR regarding "servicing" questions does not encompass the servicer's responsibility under Section 1641(f) to identify the owner of an obligation.

Items 5 and 9 seek a copy of the MERS Milestone Report, which relates to loan transfer history, and copies of communications with non-lawyer third parties. When faced with these same requests, other courts have found that they do not seek "servicing" information. *See Anglade*, Case No. 11-60956-CIV-HOPKINS, at 10 (citing *Aniel v. Litton Loan Serv., LP*, 2011 WL 635258, *2-4 (N.D. Cal. Feb. 11, 2011)). Courts have likewise reached the same conclusion about requests such as those set forth in Items 13 through 15 for a copy of the original Promissory Note and any assignments associated with the mortgage. *See id.* (citing *Dietz v. Beneficial Loan & Thrift Co.*, 2011 WL 2412738, *4 (D. Minn. June 10, 2011); *Hubbard v. Bank of Am.*, 2011 WL 2470021, *4 (D. Or. Apr. 21, 2011); *Smith v. Chase Manhattan Bank*, 2011 WL 1327916, * 3 (D. Minn. Apr. 7, 2011)).

To the extent that the November 12, 2010, letter asks for information pertaining to anything other than "servicing," such requests cannot fairly be characterized as part of a QWR. That fact, however, does not invalidate the portions of the November 12, 2010, letter that do qualify as a QWR. *Id.* (citing *Manzano v. MetLife Bank N.A.*, 2011 WL 3420811, *2 n.3 (E.D. Cal. Aug. 3, 2011);

*Famatiga v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 3320480, *8 (E.D. Mich. Aug. 2, 2011)).

Consequently, the Court considers whether Wells Fargo's response to the November 12, 2010, letter complied with the RESPA's requirements.[3]

Wells Fargo's response to the November 12, 2010, letter was dated three days later, on November 15, 2010. *See* D.E. 8-3 at 1. Thus, as Burgos acknowledges, the letter was timely under the RESPA, which requires a servicer to acknowledge receipt of a QWR within twenty days and to respond to the QWR within sixty days. *See* D.E. 10 at 7; 12 U.S.C. § 2605(e)(1)(A), (e)(2).

Burgos, however, disputes the sufficiency of the November 15, 2010, response. *See* D.E. 10 at 7. More specifically, Burgos complains that "Wells Fargo did not state whether they owned the loan or were merely acting as a servicer. Wells Fargo did not identify the past or current owner of the note." *Id.* As previously discussed, however, requests about ownership of the obligation do not fall under the category of "servicing," and therefore, Section 2605 imposes no requirement on a servicer to respond to such questions. *See also Anglade*, Case No. 11-60956-CIV-HOPKINS, at 12-13 (citing *Marsh v. BAC Home Loans Serv., LP*, 2011 WL 1196415, *8 n.8; *Dietz v. Beneficial Loan & Thrift Co.*, 2011 WL 2412738, *5). And Burgos does not challenge the sufficiency of Wells Fargo's response as it concerns payment-related information. Nor does an independent review of the response appear to provide a basis for suggesting that it is deficient. Consequently, as a matter of law, Count II must fail.

---

[3]In evaluating the sufficiency of a complaint on a motion to dismiss, the Court may consider the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Burgos disputes neither the authenticity nor the centrality of Wells Fargo's response to the November 12, 2010, letter, which Wells Fargo attached as Exhibit C to its Motion to Dismiss. *See* D.E. 8-3.

Because Count II cannot withstand a motion to dismiss, the Court need not consider Wells Fargo's argument that Burgos did not allege any facts to support its claim for actual damages or allege a pattern or practice of non-compliance that would justify statutory damages. For the same reason, and because Count I must also fail on its merits, the Court does not consider Wells Fargo's contentions that the Court should dismiss the entire Amended Complaint for Plaintiff's counsel's alleged violation of Rule 4-4.2(a) of the Rules Regulating the Florida Bar[4] or Wells Fargo's alternative request for a stay of the proceedings.

### *III. Conclusion*

For the foregoing reasons, I respectfully recommend that the Court **GRANT** Defendant Wells Fargo's Motion to Dismiss [D.E. 8]. The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.

---

[4] The Court nonetheless notes that when faced with what appears to be the identical argument concerning a factually indistinguishable situation, the Middle District of Florida concluded that "the dispute [was] too fact-reliant to be resolved in the context of a motion to dismiss. In addition, even assuming *arguendo* that Wells Fargo's assertions [were] true, the harm resulting from [the plaintiff's] attorney's (allegedly) improper communication [fell] short of warranting dismissal of [the plaintiff's] complaint." *Paschette v. Wells Fargo Bank, N.A.*, 2011 WL 2470314, *2 (M.D. Fla. June 21, 2011).

1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[5] 28 U.S.C. § 636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 23rd day of November 2011.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc: Hon. William J. Zloch

Counsel of Record

---

[5] Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).